JUDGE DAVID GUADERRAMA

FILED

2023 FEB -3 PM 1:23

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

|  |  |  |
|---|---|---|
| **ROSE SALAIZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | EP 23 CV 0047 |
| **HW SELLER LLC,** a Illinois Limited Liability Company | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      The Plaintiff is ROSE SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant HW SELLER LLC ("HW" "Defendant") is a Limited Liability Company

organized and existing under the laws of Illinois and can be served via registered agent JI Kim at

303 E. Wacker Drive, Suite 2840, Chicago, IL 60601.

**JURISDICTION AND VENUE**

3.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff;

adds little complexity to the case.

4.      Personal Jurisdiction.  This Court has general personal jurisdiction over the Defendant

1

because they have repeatedly placed calls to Texas residents, and derive revenue from Texas

residents, and they sell goods and services to Texas residents, including the Plaintiff.

5.      Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when she received a

substantial if not every single call from and/or on behalf of the Defendant that are the subject

matter of this lawsuit.

6.      This Court has venue over the Defendant because the calls at issue were sent by and/or on

behalf of the Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

8.      The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice ... to any telephone number

assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing

the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017)
(codifying a June 26, 2003 FCC order).

unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

4

20.    Plaintiff successfully registered her personal cell phone (XXX) XXX-0895 on the National Do-Not-Call Registry since May 31, 2021, which was more than 31 days prior to receiving the alleged calls.

21.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove her from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

22.    Defendant HW offers health insurance products to consumers along with additional Medicare products to senior citizens with Medicare. *See Exhibit A.*

23.    As part of their marketing, Defendant HW hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an automatic telephone dialing system ("ATDS") to solicit additional Medicare products on behalf of Defendant HW.

24.    Defendant HW approves of the contracts with the telemarketers.

25.    Defendant HW authorizes the payments to the telemarketers.

26.    Defendant HW pays the telemarketers out of bank accounts they own and control.

27.    Plaintiff has never had any relationship with Defendant HW or has ever been a customer of Defendant HW and never gave them her prior express written consent to receive the calls alleged in this case.

28.    Defendant HW has been sued prior to this lawsuit for violating the TCPA *Darder v. HW Agency, LLC.*, No. 1:22-cv-00569 (N.D.IL., Jan. 31, 2022) and *Salaiz v HW Seller,LLC*, No. 3:22-cv-00360-FM (W.D.TX., Oct. 11, 2022) and continue their illegal behavior because violating the TCPA benefits Defendant HW financially.

29.     On September 08, 2022, Defendant HW had their legal name changed from Healthworks Agency LLC to HW Seller LLC as recorded on the Illinois Secretary of State website. *See Exhibit B.*

30.     Defendant HW's website they own and control is https://healthworksinsurance.com.

31.     Plaintiff received at least ten (10) unauthorized phone calls to her personal cell phone 0895 within a twelve-month period from telemarketers/agents calling on behalf of Defendant HW soliciting Medicare products ("the calls").

32.     The calls 1-4 Plaintiff received from telemarketers calling on behalf of Defendant HW all started with 3-4 seconds of dead air followed by an audible beep (indicating the calls were made using an ATDS) before being connected to a telemarketer.

33.     The ATDS used to make the calls 1-4 had the capacity to store and produce telephone numbers using a random or sequential number generator, and to dial such numbers.

34.     With information and belief Plaintiff has received more calls from telemarketers calling on behalf of Defendant HW within the past two years that are unknown to Plaintiff at this time but will be revealed during discovery.

35.     On November 9, 2022, Plaintiff received one of multiple unauthorized calls to her personal cell phone 0895 from a telemarketer calling on behalf of Defendant HW from phone number (915) 955-8841.

36.     Plaintiff answered and there was a 3-4 second delay followed by an audible beep (indicating the call was made using an ATDS) before being connected to a male telemarketer named Julio that stated he was calling from "senior benefits."

37.     Defendant HW trains their telemarketers not to reveal their true identity and say they are calling from "senior benefits" in order to duck liability from violating the TCPA.

38.     Jessie asked if Plaintiff had Medicare parts A and B.

39.     Plaintiff was extremely aggravated and annoyed for continuing to receive the same calls

from telemarketers saying their calling from "senior benefits" soliciting additional Medicare

products and advised Jessie she was interested in additional Medicare benefits for the sole

purpose of identifying the company responsible for the calls.

40.     Jessie stated to Plaintiff,

"so, the main purpose of this call is to go over these new benefits and savings that you can be
entitled to."

41.     Jessie then asked Plaintiff qualifying additional Medicare questions and advised Plaintiff

he would be transferring her to a one of their "specialists" so they can go over the benefits

Plaintiff will become eligible for as of December 1, 2022.

42.     Jessie stated to Plaintiff,

"Once the specialist gets on the line, I will introduce you briefly and then I will disconnect for
your privacy."

43.     Plaintiff was then transferred to a representative from Defendant HW named Julio

Saldana.

44.     Before Jessie transferred the call to Julio, Jessie stated to Julio,

"Hey Julio good afternoon my name is Jessie and I have Mrs. Rose Salaiz, Mrs. Salaiz is currently
residing in the state of Texas zip code 79907 which she would like to hear about the benefits she will be
entitled to as of December 1 when she becomes Medicare parts A and B active I'll leave you with her so
you can further assist, you both have a very good day goodbye."

45.     Julio accepted the transfer from Jessie which confirmed Defendant HW hires

telemarketers to call consumers *en mass* using an ATDS without prior express written consent of

the called party soliciting additional Medicare products on behalf of Defendant HW.

46.     Julio stated to Plaintiff,

"Hi, my name is Julio Saldana and I'm a licensed insurance agent with Healthworks."

47.     Julio asked Plaintiff a series of qualifying questions and advised Plaintiff he was going to check for additional Medicare products for Plaintiff.

48.     Julio then solicited Plaintiff for a Devoted giveback HMO plan with "Devoted Health Plans" on behalf of Defendant HW.

49.     If Plaintiff would have agreed to the upgraded to the HMO Plan from Julio it would benefit Defendant HW financially.

50.     Whenever Defendant HW makes a change to a consumers Medicare by adding additional benefits, Defendant HW receives the consumers monthly premium from the government.

51.     Plaintiff received an email from Julio from jsaldana@healthworksinsurance.com that contained the Devoted giveback HMO he solicited to Plaintiff. *See Exhibit C.*

52.     The email Plaintiff received from Julio confirmed the company responsible for the calls.

53.     On November 14, 2022, Plaintiff received another call from Julio following up to see if she had received her Medicare card from the government so she can add the Devoted giveback HMO plan he had solicited to Plaintiff.

54.     Plaintiff advised Julio she had not received her Medicare card but would call Julio back if she was interested in the Devoted giveback HMO plan.

55.     Over the course of the next month Plaintiff was then harassed by other agents calling from Defendant HW soliciting additional Medicare benefits.

56.     Plaintiff on at least two occasions advised the agents from Defendant HW that she was not interested.

57.     Plaintiff did not give her prior express written consent to receive any of the calls.

58.     Plaintiff has never been a client of Defendant HW and never knew who Defendant HW was prior to receiving the calls.

59.    Defendant HW's telemarketers on two occasions used a local area code (915) where

Plaintiff resides to trick her into thinking the call was local.

60.    Table A below displays the calls made to Plaintiff from and/or on behalf of Defendant

HW.

Table A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 11/02/2022 | 6:43 PM | 412-283-2161 | Male telemarketer calling from senior benefits. |
| **2.** | 11/03/2022 | 2:00 PM | 972-762-7585 | Male telemarketer calling from senior benefits. |
| **3.** | 11/07/2022 | 9:32 AM | 915-493-5321 | Male telemarketer calling from senior benefits. |
| **4.** | 11/09/2022 | 3:32 PM | 915-955-8841 | Telemarketer Jessie calling from senior benefits. Transferred to Julio from Healthworks. |
| **5.** | 11/18/2022 | 11:01 AM | 312-756-8874 | Missed call |
| **6.** | 11/19/2022 | 1:06 PM | 312-756-8874 | Missed call |
| **7.** | 11/22/2022 | 3:09 PM | 312-756-8874 | Sean Reddy calling from Healthworks advised him not interested. |
| **8.** | 12/02/2022 | 1:31 PM | 312-756-8874 | James Ross calling from Healthworks advised him not |

| | | | | interested when called me on Sunday 12/4/2022. |
|---|---|---|---|---|
| **9.** | 12/5/2022 | 5:57 PM | 312-756-8874 | Sheena Rodgers calling from Healthworks advised her I already told them I'm not interested. |
| **10.** | 1/31/2023 | 4:28 PM | 312-756-8874 | Missed call |

61.     Defendant HW employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

62.     Defendant HW has knowledge of and has adopted and maintained TCPA violations as a sales strategy. Defendant HW knew full well that their telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant HW. Defendant HW willfully accepts these referrals and compensate the telemarketers for their illegal phone calls.

63.     Defendant HW refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant HW financially.

64.     Defendant HW is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain Defendant HW's registration.

65.     Defendant HW does not qualify for an exemption under § 302.053.

66.     Each and every call was placed while knowingly ignoring the national do-not-call registry.  Each and every call was placed without training their telemarketers/agents on the use of an internal do-not-call policy.

67.     Defendant HW never sent Mrs. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to Defendant HW to jsaldana@healthworksinsurance.com on January 30, 2023, which is the email Plaintiff received from Julio. *See Exhibit C.*

68.     Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

69.     No emergency necessitated the calls.

70.     With information and belief, Defendant HW did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

71.     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

72.     The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

73.     The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

74.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

75.     The use or employment by any person of a false, misleading, or deceptive act or practice"

11

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

76.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

77.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

78.    Defendant HW's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

79.    Defendant HW's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

80.    Defendant HW's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

81.    Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

## VICARIOUS LIABILITY OF DEFENDANT HW

82.    Defendant HW is vicariously liable for the telemarketing calls that generated the lead for Defendant HW.

83.    The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

84.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

85.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

86.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

87.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

88.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

89.     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

90.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

91.     Defendant HW is legally responsible for ensuring that the telemarketers that make telemarketing calls on its behalf comply with the TCPA when so doing.

92.     Defendant HW knowingly and actively accepted business that originated through illegal telemarketing.

93.     Defendant HW knew (or reasonably should have known) that its telemarketers were violating the TCPA on its behalf but failed to take effective steps within HW's power to force them to cease that conduct.

94.     By hiring a company to make calls on its behalf, Defendant HW "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

14

95.     Moreover, Defendant HW maintained interim control over the actions of its telemarketers.

96.     For example, Defendant HW had absolute control over whether, and under what circumstances, it would accept a customer from their telemarketers.

97.     Furthermore, Defendant HW had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant HW and the ability to require them to respect the National Do Not Call Registry.

98.     Defendant HW also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

99.     Defendant HW donned its telemarketers with apparent authority to make the calls at issue.

100.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

101.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

102.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

103.    Defendant HW is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant HW

15

telemarketers/representatives solicited Plaintiff for additional Medicare products.

## The Plaintiff's cell phone is a residential number

104.   The calls were to the Plaintiff's cellular phone 0895 which is the Plaintiff's personal cell phone that she uses for personal, family, and household use. The Plaintiff maintains no landline phones at her residence and has not done so for at least 15 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

105.   Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106.   Defendant and/or their telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least four (4) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an ATDS without prior express written consent.

107.   Plaintiff was statutorily damaged at four (4) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

108.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

109.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS without prior express written consent.

## COUNT TWO:

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

110.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

111.    Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

112.    Plaintiff was statutorily damaged at least ten (10) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

113.    Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

114.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT THREE:**

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

115.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

116.    The foregoing acts and omissions of the Defendant and/or their telemarketers or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

> a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];
>
> b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,
>
> c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

117.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

118.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**COUNT FOUR**

**(Violations of The Texas Business and Commerce Code 305.053)**

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

119.    Plaintiff incorporates the foregoing allegations as if set forth herein.

120.    The foregoing acts and omissions of the Defendant and/or their telemarketers or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without her prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

121.    Plaintiff seeks for herself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

122.    Plaintiff seeks for herself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

**COUNT FIVE**

**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**

123.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

122.    Defendant's telemarketers/agents made at least ten (10) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.    As a result of Defendant's telemarketers/agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

124.    As a result of Defendant's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rose Salaiz prays for judgment against the Defendant jointly and severally as follows:

     A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

     B.     A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

     C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

     D.     An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for four calls.

     E.     An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for ten calls.

     F.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

     G.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for ten calls.

     H.     An award to Mrs. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.      An award to Mrs. Salaiz of interest, costs, and attorneys' fees, as allowed by law

and equity

J.      Such further relief as the Court deems necessary, just, and proper.

February 3, 2023,                          Respectfully submitted,

Rose Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0895
21.msalaiz@gmail.com

# EXHIBIT A

 

# Health Insurance That Works For You

Find Health Insurance Plans
in your area today

Contact Us

https://healthworksinsurance.com

HealthWorks

# ⚙ HealthWorks



This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

Accept

Our experienced health insurance advisors put your needs first. We are proud to provide a high quality level of customer service and are committed to the health and wellness of all our clients. Our goal is to make your health insurance work for you.

## Experience and Professionalism

https://healthworksinsurance.com

  **HealthWorks**



We understand that today's health insurance landscape can be very confusing. We're here to listen and find affordable options to meet your individual needs.

This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

Accept

## Individual and Family Coverage

Plans to cover medical expenses for you and your loved ones

Learn more

## Medicare Advantage Plans

# EXHIBIT B

**cyberdriveillinois.com is now ilsos.gov**



Office of the Secretary of State Jesse White

# ilsos.gov

# Corporation/LLC Search/Certificate of Good Standing

## LLC File Detail Report

| | |
|---|---|
| File Number | 06499457 |
| Entity Name | HW SELLER LLC |
| Status | ACTIVE |

**Entity Information**

Principal Office
303 E WACKER DR, SUITE 2840
CHICAGO, IL 606010000

Entity Type
LLC

Type of LLC
Domestic

Organization/Admission Date
Thursday, 31 August 2017

Jurisdiction
IL

Duration
PERPETUAL

**Agent Information**

Name
JI KIM

Address
303 E WACKER DR STE 2840
CHICAGO , IL 60601

Change Date
Wednesday, 20 January 2021

## Annual Report

For Year
2022

Filing Date
Friday, 24 June 2022

## Managers

Name
Address
GREGORY, JASON M
303 E WACKER DR STE 2840
CHICAGO, IL 606010000

Name
Address
KIM, JI SUNG
303 E WACKER DR STE 2840
CHICAGO, IL 606010000

Name
Address
BUKOWSKI, STANLEY M.
303 E WACKER DR STE 2840
CHICAGO, IL 606010000

## Old LLC Name

09/08/2022
HEALTHWORKS AGENCY LLC

# EXHIBIT C

Gmail - Plan

# M Gmail

ROSIE SALAIZ <rsalaiz120457@gmail.com>

## Plan
1 message

**Julio Saldana** <jsaldana@healthworksinsurance.com>
To: "RSALAIZ120457@gmail.com" <RSALAIZ120457@gmail.com>

Wed, Nov 9, 2022 at 3:44 PM

📄 **2023-Devoted-GIVEBACK-El-Paso-(HMO)-SB-H7993-008-ENG.pdf**
826K